17-2208, 18-359
*Scott v. Chipotle Mexican Grill, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2018

(Argued:  February 13, 2019          Decided:  April 1, 2020)

Nos. 17-2208-cv, 18-359-cv

MAXCIMO SCOTT, on behalf of himself and others similarly situated, JAY
FRANCIS ENSOR, CHRISTINE JEWEL GATELEY, KRYSTAL PARKER, STACY HIGGS,
EUFEMIA JIMENEZ, MATHEW A. MEDINA,

*Plaintiffs-Appellants,*

*v.*

CHIPOTLE MEXICAN GRILL, INC.,
CHIPOTLE SERVICES, LLC,

*Defendants-Appellees.*[*]

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Before:

PARKER, CHIN, and SULLIVAN, *Circuit Judges*.

---

[*]     An additional 516 plaintiffs are listed in the attached Appendix.

Appeal from an opinion and order of the United States District Court for the Southern District of New York (Carter, *J.*) in this hybrid class and collective action brought on behalf of employees of a national restaurant chain who claim they were denied overtime wages because they were misclassified as exempt employees. The district court denied the employees' motion for class certification and granted the employer's motion to decertify the conditionally certified collective action. The employees appeal, contending that the district court erred in (1) denying class certification on the basis of a lack of predominance and superiority, and (2) granting decertification of the collective action on the ground that the named plaintiffs and opt-in plaintiffs are not similarly situated.

AFFIRMED IN PART and VACATED IN PART.

Judge SULLIVAN CONCURS IN PART and DISSENTS IN PART in a separate opinion.

RACHEL BIEN (Justin M. Swartz, Melissa L. Stewart, *on the brief*), Outten & Golden LLP, New York, New York; Paolo Chagas Meireles, Shavitz Law Group, P.A., Boca Raton, Florida; Brian Scott Schaffer, Fitapelli & Schaffer, LLP, New York, New York, *for Plaintiffs-Appellants*.

RICHARD J. SIMMONS (Lisa M. Lewis, Brian D. Murphy, *on the brief*), Sheppard, Mullin, Richter & Hampton LLP, Los Angeles, California, New York, New York; Bruce A. Montoya, John Karl Shunk, Kendra N. Beckwith, Messner Reeves LLP, Denver, Colorado, *for Defendants-Appellees*.

CHIN, *Circuit Judge*:

Plaintiffs-appellants are seven named plaintiffs representing six putative classes under Federal Rule of Civil Procedure 23(b)(3) (the "class plaintiffs"). Plaintiffs-appellants also sue on behalf of themselves and 516 individuals who opted in to a conditionally certified collective action (the "collective plaintiffs") pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 216(b). Class plaintiffs are current and former "Apprentices" of defendants-appellees Chipotle Mexican Grill, Inc. and Chipotle Services, LLC (together, "Chipotle") who allege that Chipotle misclassified them as exempt employees in violation of the labor laws in six states. Collective plaintiffs are current and former Chipotle Apprentices who allege that Chipotle misclassified them as exempt employees in violation of the FLSA. As a result of Chipotle's purported misclassification, plaintiffs-appellants contend that they were unlawfully denied overtime wages required under state and federal law.

3

On March 29, 2017, the district court denied class plaintiffs' class certification motion on the grounds that class plaintiffs failed to meet the predominance and superiority requirements of Rule 23(b)(3). *Scott v. Chipotle Mexican Grill, Inc.*, No. 12-cv-8333, 2017 WL 1287512, at *3-8 (S.D.N.Y. Mar. 29, 2017). In the same decision, the district court granted Chipotle's motion to decertify the collective action on the grounds that collective plaintiffs failed to establish that opt-in plaintiffs were "similarly situated" to the named plaintiffs as required for collective treatment under the FLSA. *Id.* at *8-9.

On appeal, class plaintiffs principally argue that the district court relied on erroneous law and clearly erroneous facts in determining that common questions of law or fact did not predominate. Collective plaintiffs contend that the district court erred in decertifying the collective action because it relied on an erroneous view of the law -- namely, that the FLSA's "similarly situated" inquiry "mirrors" the Rule 23 analysis in rough proportion to the number plaintiffs who have chosen to opt-in. For the reasons set forth below, we affirm the district court's order denying class certification, vacate the district court's order decertifying the collective action, and remand for further proceedings.

## BACKGROUND

**A.**   *The Facts*

Chipotle operates over 2,000 restaurants in the United States, serving burritos, tacos, salads, and more. To manage and operate its stores, Chipotle employs both salaried and hourly workers. There are three categories of salaried employees -- Restauranteurs, General Managers, and Apprentices -- not all of whom are necessarily employed at each Chipotle location. Chipotle locations also hire hourly workers, namely Service Managers, Kitchen Managers, and crew. As of 2016, Apprentices earned a salary of between $38,000 and $51,500 and were eligible for benefits such as bonuses, paid vacation, insurance, and retirement plans.

Chipotle describes the "principal responsibilities" of the Apprentice position as "[l]eading the restaurant team in successful day-to-day operations"; "[a]cting as General Manager when General Manager is not present"; "[t]raining and developing the restaurant team"; "[e]suring that employees are paid properly, receive appropriate benefits, and are prepared for additional career opportunities"; "[i]dentifying talent, interviewing, and hiring new Crew"; "[p]articipating in personnel decisions regarding the restaurant team"; "[w]riting

schedules that meet the needs of the business"; "[a]ssisting the General Manager in performing administrative duties including payroll, inventory, food ordering, proper cash handling, etc."; "[s]uccessfully communicating company changes/focus to the team"; "[b]uilding sales and managing the restaurant budget"; "[m]aintaining a clean restaurant with excellent quality food and customer service"; and "[m]aintaining cleaning and sanitation standards within the restaurant." J. App'x at 4246; *see also id.* at 4250. The parties dispute whether Apprentices are in training to become General Managers.

In or around 2011, Chipotle hired a consultant to opine on the exempt status of Apprentices -- that is, whether Apprentices were entitled to overtime or were considered "executive" or "managerial" employees and were therefore exempt from state and federal overtime laws. After reviewing Chipotle's uniform job description and conducting interviews with Apprentices at various locations, the consultant concluded that the Apprentice position is uniformly exempt from state and federal overtime laws based on the "wage and hour" definition of an Executive. The consultant looked to the following range of tasks of Apprentices in making this determination: (1) hiring and firing, (2) training, (3) scheduling, (4) payroll processing, (5) writing and conducting

performance reviews, (6) documenting performance, (7) cash handling, (8) managing employees during manager's absence, and (9) communicating corporate changes. The consultant's report notes that although Apprentices assist with manual labor, the majority of Apprentice time is spent managing the day-to-day activities of the restaurant. Chipotle thereafter classified all Apprentices throughout the country (except those in California) as exempt from the overtime provisions of the FLSA and related state overtime laws based on their salary, their actual duties, and Chipotle's reasonable expectations regarding the duties performed.

**B.    *Procedural History***

Plaintiff-appellant Maxcimo Scott filed the initial complaint in this case on November 15, 2011. Following a series of amendments to the pleadings joining additional plaintiffs and adding claims, on February 10, 2015, plaintiffs-appellants filed the operative third amended complaint, which alleges that Chipotle misclassified its Apprentice workers and denied them overtime pay in violation of the FLSA as well as state laws in Colorado, Illinois, Missouri, New York, North Carolina, and Washington. Class plaintiffs purport to represent six

7

classes totaling approximately 1,600 Apprentices[1] who worked at Chipotle

locations in the six states.  Collective plaintiffs consist of the seven named

plaintiffs and 516 opt-in plaintiffs who affirmatively consented to joining the

FLSA suit after the district court conditionally certified the collective action on

June 30, 2013.

On May 9, 2016, following several years of discovery -- including the

taking of over 80 depositions and the submission of over 240 declarations --

Chipotle moved to decertify the collective action on the grounds that the named

plaintiffs are not similarly situated to the opt-in plaintiffs.  That same day, class

plaintiffs moved to certify six Rule 23(b)(3) classes corresponding to the six states

in which the class representatives worked.  On March 29, 2017, the district court

issued an opinion and order denying class plaintiffs' motion for class certification

and granting Chipotle's motion to decertify the collective action.  *See generally*

*Scott*, 2017 WL 1287512.  As to the motion for class certification, the district court

held that although class plaintiffs satisfied Rule 23(a)'s threshold requirements of

numerosity, commonality, typicality, and adequacy, *Scott*, 2017 WL 1287512, at

---

[1]     The approximate number of represented individuals are based on May 2016 estimates generated by Chipotle's Compliance and Field People Support Director.  This figure may have changed because the classes are defined to include Apprentices employed through "the date of final judgment."

*3, they failed to satisfy Rule 23(b)(3)'s requirements of predominance and superiority, *id.* at *4-8. According to the district court, class plaintiffs established commonality because "the question of whether Apprentices were misclassified as exempt employees is common to all class members [and] can be answered with common proof." *Id.* at *3. The court based this determination on the fact that (1) "Chipotle uniformly classified all Apprentices as exempt," (2) "Chipotle has an expectation that the core duties of the apprentice is the same regardless of the market in which an Apprentice works," and (3) "Chipotle uses a single job description for all Apprentices that lists 'principal accountabilities.'" *Id.* The district court found these facts to be "unquestionably probative of whether an employee is properly classified as exempt." *Id.* (internal quotation marks omitted).

Ultimately, however, the district court concluded that these common questions were outweighed by individualized ones surrounding each plaintiff's primary duty under Labor Department regulations. *Id.* at *4. The district court summarized each of the named plaintiffs' testimony regarding their primary duty and found the testimony to be "internally inconsistent and distinguishable." *Id.* It also analyzed the testimony of the opt-in plaintiffs as to a number of the

relevant Labor Department criteria for determining exemptions -- involvement in personnel decisions, scheduling authority, employee supervision and training, and amount of time spent on managerial tasks -- and found that the testimony "rang dissonantly from the record," as some Apprentices recounted independently running their own stores while others testified to exercising very few, if any, managerial duties. *Id.* at *4-7. Thus, while the "Apprentices' range of managerial tasks" and "range of manual labor tasks" were "similar," the district court concluded that the "disparate accounts from Apprentices" and the "individualized proof . . . needed to establish each class member's entitlement to relief" rendered class plaintiffs' claims ill-suited to the class action procedures of Rule 23(b)(3). *Id.* at *4, 8.

With respect to Chipotle's motion to decertify the collective action, the district court considered whether named plaintiffs were "similarly situated" to the opt-in plaintiffs by considering the following factors: "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against collective action treatment."

*Id.* at *8 (citing *Hernandez v. Fresh Diet, Inc.*, No. 12-cv-4339, 2014 WL 5039431, at *3 (S.D.N.Y. Sept. 29, 2014)).[2]

In analyzing the first factor -- disparate employment settings -- the district court noted that "[c]ourts have recognized that the 'similarly situated' analysis for purposes of the FLSA certification can be viewed, in some respects, as a sliding scale.  In other words, the more opt-ins there are in the class, the more the analysis under § 216(b) will mirror the analysis under Rule 23." *Id.* (quoting *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 651 (S.D.N.Y. 2013)).  The court then concluded that "Apprentices had vastly different levels and amounts of authority in exercising managerial tasks" and noted that "disparities in job duties" are "axiomatic considering that the 516 opt-in plaintiffs worked at 37 states across Chipotle's nine geographic regions." *Id.* at *8-9.  The district court considered the second and third factors -- defenses and procedural fairness -- together, and concluded that "it would be difficult for Chipotle to rely on 'representative proof' while asserting its defenses." *Id.* at * 9.  Accordingly, the

---

[2]      In doing so, the district court was applying the second step of the two-tier approach to determining whether named plaintiffs are similarly situated to op-in plaintiffs.  *See Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016).  *See* pp. 27-28 *infra*.  The district court had applied step one when it conditionally certified the collective action on June 30, 2013.

11

district court held that the named plaintiffs were not similarly situated to opt-in plaintiffs and ordered the conditionally certified collective action to be decertified and the claims of the opt-in plaintiffs to be dismissed without prejudice. *Id.* at *9

This appeal followed. We granted class plaintiffs leave to appeal the denial of class certification pursuant to Rule 23(f), and we granted collective plaintiffs leave to appeal pursuant to 28 U.S.C. § 1292(b).

## *DISCUSSION*

We begin with an overview of hybrid FLSA and state overtime misclassification suits. We then discuss the district court's denial of class certification and decertification of the FLSA collective action in turn.

## I. *Hybrid Class and Collective Actions*

"Because FLSA and [state law] claims usually revolve around the same set of facts, plaintiffs frequently bring both types of claims together in a single action using the procedural mechanisms available under 29 U.S.C. § 216(b) to pursue the FLSA claims as a collective action and under Rule 23 to pursue the [state law] claims as a class action under the district court's supplemental

jurisdiction." *Shahriar v. Smith & Wollensky Rest. Grp. Inc.*, 659 F.3d 234, 244 (2d Cir. 2011).

In this hybrid class and collective action, plaintiffs claim that they worked overtime, they were legally entitled under state and federal law to overtime pay, and Chipotle denied them such payment. The crux of the dispute is whether plaintiffs were entitled to overtime under the FLSA and state labor laws. The answer to this question turns on whether Chipotle improperly classified plaintiffs as exempt employees under Labor Department guidelines and parallel state law, "which in turn will require the district court to decide a number of subsidiary questions," *Myers v. Hertz Corp.*, 624 F.3d 537, 548 (2d Cir. 2010) (internal quotation marks omitted), as discussed below.

### A.     *The FLSA*

Under the FLSA, employers are required to pay employees who work over forty hours per week "not less than one and one-half times the regular rate at which [the employees are] employed" for those overtime hours. 29 U.S.C. § 207(a)(1). This requirement is subject to certain exemptions based on employee classification. As relevant here, the FLSA exempts from the overtime

requirement "employee[s] employed in a bona fide executive [or] administrative . . . capacity." 29 U.S.C. § 213(a)(1).

Administrative regulations classify employees as "executive" if (1) they are "[c]ompensated on a salary or fee basis," (2) their "primary duty is management of the enterprise . . . or of a customarily recognized department or subdivision thereof," (3) they "customarily and regularly direct[] the work of two or more other employees," and (4) they "ha[ve] the authority to hire or fire other employees or" if their "suggestions and recommendations" on personnel decisions "are given particular weight." 29 C.F.R. § 541.100(a). The second element -- whether an employee's primary duty is managerial in nature -- generally requires consideration of activities such as

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of

materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

Regulations classify employees as "administrative" if (1) they are "[c]ompensated on a salary basis," (2) their "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and (3) their "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). The second element -- whether the employee's primary duty is directly related to management -- requires consideration of whether the employee "perform[s] work directly related to assisting with the running or servicing of the business, as distinguished . . . from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a).

The applicability of both exemptions turns on the "primary duty" of an employee. *See* 29. C.F.R. § 541.2 (providing that "[t]he exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations"

defining executive and administrative employees).  The regulations make clear that these questions "should be resolved by examining the employees' actual job characteristics and duties."  *Myers*, 624 F.3d at 548; *see also* 29 C.F.R. § 541.700(a) (providing that determining an employee's "primary duty" requires analysis of "all the facts in a particular case," looking to the "principal, main, major or most important duty that the employee performs").  Among other things, courts are to consider the following factors in assessing an employee's primary duty:

> the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a).  Although the amount of time spent performing exempt work is not dispositive, it "can be a useful guide."  *Id.* § 541.700(b).  "Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement."  *Id.*

"The exemption question under the FLSA is a mixed question of law and fact.  The question of how the employees spent their working time is a question of fact.  The question of whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law."  *Pippins v.*

16

*KPMG, LLP*, 759 F.3d 235, 239 (2d Cir. 2014) (quoting *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 559 (2d Cir. 2012)).

## B. *State Overtime Law*

State exemption criteria in the six states implicated in the class plaintiffs' claims largely track the FLSA.[3]  Indeed, Chipotle conceded below that state "executive/administrative exemption[s] . . . , unless specifically noted, parallel the analysis set forth under the FLSA."  Dkt. No. 1100, at 22.  There are, however, some minor differences.  As Chipotle notes, whereas under federal law the amount of time an employee spends performing an activity is merely "a useful guide" to determining that employee's primary duty, *see* 29 C.F.R. § 541.700(b), Colorado and Washington have strict percentage limitations governing how much time an employee can spend on non-exempt activities and still properly be considered an exempt employee, *see* 7 Colo. Code Regs. § 1103-1.5(b) (providing that overtime law only applies only if the employee spends "a minimum of 50% of the workweek in duties directly related to supervision"); Wash. Admin. Code § 296-128-510(5) (providing that overtime law applies only if

---

[3]      *See* N.Y. Comp. Codes R. & Regs. Tit. 12, §§ 146-1.4, 146-1.6; N.Y. Lab. Law § 195 (New York); Mo. Rev. Stat. § 290.527.1 (Missouri); 820 Ill. Comp. Stat. § 105/4a (Illinois); N.C. Gen. Stat. § 95-25.22(a1); 13 N.C. Admin. Code § 12.080 (North Carolina); *see also Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 n.5 (2d Cir. 2013).

the employee "does not devote as much as 40% . . . of his hours worked . . . to activities which are not directly and closely related" to the performance of managerial work).  Thus, the exemption analysis under state law is largely the same as the analysis under the FLSA, subject to these minor caveats.

## II.     *Denial of Class Certification*

Class plaintiffs argue that the district court, in concluding that they failed to establish predominance and superiority, committed legal error and relied on clearly erroneous facts.  For the reasons that follow, we conclude that the district court did not commit reversible error.

### A.     *Standard of Review*

We review a district court order denying class certification for abuse of discretion as to the ultimate decision and as to each of the Rule 23 requirements.  *Myers*, 624 F.3d at 547.  We review legal conclusions *de novo* and factual findings for clear error.  *Id.*  This standard means that the district court "'is empowered to make a decision -- of *its* choosing -- that falls within a range of permissible decisions,' and we will only find 'abuse' when the district court's decision 'rests on an error of law or a clearly erroneous factual finding, or its decision cannot be located within the range of permissible decisions.'"  *Id.*

(alterations omitted) (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)).

### B. *Applicable Law*

Plaintiffs seeking certification of a Rule 23(b)(3) damages class action must first establish numerosity, commonality, typicality, and adequacy of representation, and then predominance of common questions of law or fact and the superiority of a class action over other procedures. Fed. R. Civ. P. 23(a), (b)(3). The "predominance" requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *see also Myers*, 624 F.3d at 547.

A court examining predominance must assess (1) "the elements of the claims and defenses to be litigated," (2) "whether generalized evidence could be offered to prove those elements on a class-wide basis or whether

individualized proof will be needed to establish each class member's entitlement to relief," and (3) "whether the common issues can profitably be tried on a class[-]wide basis, or whether they will be overwhelmed by individual issues." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015).

The question whether employees are entitled to overtime under the FLSA is "a complex, disputed issue, and its resolution turns on exemption, which in turn will require the district court to decide a number of subsidiary questions involving whether plaintiffs fall within the Labor Department's criteria for 'employees employed in a bona fide executive [or administrative] capacity.'" *Myers*, 624 F.3d at 548 (quoting 29 U.S.C. § 213(a)(1)). "Significantly, the regulations make clear that these questions should be resolved by examining the employees' actual job characteristics and duties." *Id*. "Economies of time, effort, and expense in fully resolving each plaintiff's claim will only be served, and the predominance requirement satisfied, if the plaintiffs can show that some [of the subsidiary questions necessary to determining exemption] can be answered with respect to the members of the class as a whole through generalized proof and that those common issues are more substantial than individual ones." *Id.* at 549 (internal quotation marks and citations omitted).

## C. *Application*

Class plaintiffs argue that the district court's conclusion that predominance was not met was erroneous because the court (1) made clearly erroneous factual findings regarding the distinctions among class members, (2) rested its conclusion on an erroneous view of the law that common questions cannot predominate if some workers perform managerial tasks that others do not perform, and (3) failed to weigh the individualized evidence against the common evidence. We conclude that the district court did not rest its decision on an error of law or a clear error of fact. Nor did it abuse its discretion. Accordingly, we need not address class plaintiffs' superiority arguments. *See Myers*, 624 F.3d at 548 (noting the "need only [to] address the 'predominance' requirement" because the finding of a lack of predominance was not error).

The district court began its predominance analysis by acknowledging that "Apprentices' *range* of managerial tasks such as employment decisions, scheduling, inventory, performance evaluations" and "*range* of manual labor tasks such as working the line, serving customers, prepping, grilling, and running the register" were "similar." *Scott*, 2017 WL 1287512, at *4 (emphasis added). Indeed, this finding, combined with Chipotle's uniform job description

and its uniform classification of Apprentices as exempt employees, formed the basis of the district court's conclusion that class plaintiffs had established commonality. *See id.* at *3. But the court went on to explain that although the *range* of tasks were largely the same across class plaintiffs, the *primary duty* performed by class plaintiffs -- the dispositive question of the exemption inquiry -- was not adequately similar. *Id.* at *4.

The court analyzed the testimony of the named plaintiffs regarding their primary duty and found that the testimony was "internally inconsistent and distinguishable from one another." *Id.* at *4. For example, whereas named plaintiffs Scott and Parker did not have any say in hiring and claimed no role in employee development or discipline, named plaintiffs Higgs and Medina made hiring and termination recommendations and trained employees. *Id.* at *5.

The court also analyzed the testimony of putative class members regarding four key categories of the "primary duty" inquiry, "[n]otwithstanding the internally inconsistent testimony among the named Plaintiffs." *Id.* at *6. It concluded that the putative class members' testimony also "rang dissonantly from the record." *Id.* As to personnel decisions, one of the tasks considered managerial under Labor Department regulation, *see* 29 C.F.R. § 541.102, the

district court found that while "[m]any apprentices played a significant role in personnel decisions," others "testified that they had no involvement" in such decisions, *Scott*, 2017 WL 1287512, at *6. As to scheduling authority, also a task considered to be managerial under Labor Department guidelines, *see* 29 C.F.R. § 541.102, the district court found that while "[s]ome Apprentices prepared and disbursed schedules without . . . approval from higher management," others "did not perform this managerial task, because they did not believe they had the authority to do so," *Scott*, 2017 WL 1287512, at *6. The district court found similar inconsistencies across the testimony of the putative class members with respect to two other important consideration under the guidelines: employee supervision and training, and the amount of time spent on managerial tasks. *See id.* at *7-8.

On the basis of these factual determinations, the district court concluded that despite the common questions of fact -- including Chipotle's blanket classification of Apprentices, the outside consultant's analysis concerning exemption, the uniform Apprentice job description, and Chipotle's expectation that Apprentices perform the same responsibility -- "[t]he disparate accounts from Apprentices prove[d] fatal to the predominance inquiry." *Id.* at *8. Thus,

23

the district court concluded that class plaintiffs failed to meet their burden of proving predominance.

Class plaintiffs argue that this conclusion rested on clearly erroneous factual findings. We are not persuaded. Although nominally an argument about clearly erroneous facts, this assertion boils down to a disagreement with the district court's ultimate conclusion. We can discern no clearly erroneous facts relied upon in the district court's analysis; it based its legal conclusion on a fair interpretation of the facts after thoroughly parsing the voluminous record in the case. While reasonable minds could disagree, on the record before us we cannot say that the district court's factual findings were clearly erroneous or that its conclusion was outside the range of permissible decisions.

Class plaintiffs also argue, in cursory fashion, that the district court committed legal error by (a) assuming that common questions cannot predominate if some workers perform managerial tasks that others do not perform and (b) failing to weigh the individualized evidence against the common evidence. We disagree that the district court committed such errors. It correctly cited the law of class certification and applied that law to the facts of the case. It concluded that predominance was not met only after weighing the

24

individualized issues against the common ones and concluding that the individualized issues proved "fatal" to the balancing. *Scott*, 2017 WL 1287512, at *8. Like class plaintiffs' argument that the district court clearly erred in its construction of the facts, these legal arguments are, in effect, an effort to couch class plaintiffs' disagreement with the district court's reasoned decision as an error of law. But, as discussed above, the district court's conclusion fell within the range of permissible decisions committed to its discretion.

Accordingly, we affirm the district court's denial of class plaintiffs' motion to certify the proposed class actions.

## III. *Collective Action Decertification*

Collective plaintiffs principally argue that the district court committed legal error by improperly analogizing the standard for maintaining a collective action under the FLSA to Rule 23 procedure, and relying on that improper analogy in concluding that named plaintiffs and opt-in plaintiffs are not "similarly situated." For the reasons that follow, we agree.

### A. *Standard of Review*

We have not ruled on the appropriate standard of review to be applied to a district court's decertification of a conditionally certified collective

25

action. The parties agree, as do we, that "[l]ike the district court's certification determination pursuant to Rule 23," we review its decision to decertify an FLSA collective action for abuse of discretion. *See Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 539 (2d Cir. 2015). Thus, "we will only find 'abuse' when the district court's decision 'rests on an error of law or a clearly erroneous factual finding, or its decision cannot be located within the range of permissible decisions.'" *Myers*, 624 F.3d at 547 (alterations omitted) (quoting *Zervos*, 252 F.3d at 169). We review *de novo* the district court's selection and application of the legal standards that led to its conclusion to decertify. *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 18 (2d Cir. 2003) (discussing Rule 23 standard of review).

### B. *Applicable Law*

The FLSA provides that an action to recoup unpaid overtime wages

> may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves *and other employees similarly situated*. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) (emphasis added). The Supreme Court has characterized § 216(b) as a "joinder process." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 n.1 (2013). Rather than providing for a mere procedural mechanism, as is the

case with Rule 23, § 216(b) establishes a "*right . . .* to bring an action by or on behalf of any employee, and [a] *right* of any employee to become a party plaintiff to any such action," so long as certain preconditions are met. 29 U.S.C. § 216(b) (emphasis added); *see also Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989) (noting that Congress gave employees the "right" to proceed collectively)

One of the principal conditions to proceeding collectively under § 216(b) is that the named plaintiffs be "similarly situated" to the opt-in "party plaintiff[s]." *See* 29 U.S.C. § 216(b). Procedurally, we have endorsed a two-step process for certifying FLSA collective actions based on the "similarly situated" requirement:

> At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law. At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs.

*Glatt*, 811 F.3d at 540 (citing *Myers*, 624 F.3d at 555). Substantively, however, we have said little regarding what it means to be "similarly situated" and how district courts should analyze whether named and party plaintiffs are so situated, particularly at Step Two.

27

### 1. The "Similarly Situated" Requirement

The FLSA does not define the term "similarly situated." The Supreme Court, analyzing the same "similarly situated" standard of § 216(b) that is incorporated into both the FLSA and the Age Discrimination in Employment Act (the "ADEA"), has held that Congress's goal in granting employees the right to proceed as a collective was to provide them "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc.*, 493 U.S. at 170. This results in the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged" FLSA violation. *See id.*

This result -- the efficient resolution in one proceeding of common issues of law and fact arising from the same alleged FLSA violation -- can only be achieved to the extent that named plaintiffs and opt-in plaintiffs share one or more issues of law or fact that are material to the disposition of their FLSA claims. Thus, to be "similarly situated" means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation. *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114 (9th Cir. 2018). That is, party plaintiffs are similarly situated, and may proceed in a collective, to the extent

they share a similar issue of law or fact material to the disposition of their FLSA claims.[4]  It follows that if named plaintiffs and party plaintiffs share legal or factual similarities material to the disposition of their claims, "dissimilarities in other respects should not defeat collective treatment." *Id.*  If the opt-in plaintiffs are similar to the named plaintiffs in some respects material to the disposition of their claims, collective treatment may be *to that extent* appropriate, as it may *to that extent* facilitate the collective litigation of the party plaintiffs' claims.[5]

This similarly situated standard is consistent with that endorsed by our sister circuits as well as district courts within this circuit.  *See, e.g.*, *Campbell*, 903 F.3d at 1117 (holding that, at Step Two, "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims"); *Halle v. W. Penn*

---

[4]  In contending that we have "equat[ed] 'similarly situated' with 'any similarity,'" Dissent at 2, the Dissent criticizes a standard that -- although helpful to the critique -- is nowhere to be found in our text.  As clearly set forth above, we do not hold that the named plaintiffs and opt-in plaintiffs are "similarly situated" for purposes of a collective action under 29 U.S.C. § 216(b) when they share "any similarity"; rather, we hold that the standard is met when there is similarity with respect to "an issue of law or fact material to the disposition of their FLSA claim."  Contrary to the Dissent's assertions, the standard established here is meaningfully circumscribed.

[5]  District courts are well equipped to manage cases in this way.  For example, Rule 42 provides for the possibility of partial consolidation for trial, to the extent separate actions involve common questions of law or fact.  Fed. R. Civ. P. 42(a)(1).

*Allegheny Health Sys. Inc.*, 842 F.3d 215, 226 (3d Cir. 2016) (noting that, at Step Two, "[b]eing 'similarly situated' means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA" (internal quotation marks omitted)); *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 367 (S.D.N.Y. 2014) (noting that, at Step Two, named and opt-in plaintiffs are similarly situated to the extent they "were common victims of a FLSA violation pursuant to a systematically-applied company policy or practice such that there exist common questions of law and fact that justify representational litigation" (quoting *Pefanis v. Westway Diner, Inc.*, No. 08-cv-7813, 2010 WL 3564426, at *4 (S.D.N.Y. Sept. 7, 2010)); *see also* Newberg on Class Actions § 23:39 (5th ed. 2017) (noting that under § 216(b), the plaintiffs must demonstrate that they have all been "subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA").[6]

---

[6] The Dissent goes to great lengths to distinguish these cases and argue that the standard we set forth today is "newly minted." Dissent at 1. But providing clarity is not making something new. The standard we adopt here is plainly compelled by the statutory text and Supreme Court precedent and has been endorsed by courts outside of this circuit along with lower courts within this Circuit. In selectively quoting language from these opinions to argue that they nonetheless employ elements of the ad hoc test, *see* Dissent at 4-5, the Dissent only further underscores the absence of a clear standard, and the need for clear guidance from this Court.

## 2. *The "Ad Hoc" Approach*

The majority of courts in this Circuit, including the district court below, employ what has been termed an "ad hoc" approach to the similarly situated inquiry at Step Two.[7]  Under this flexible approach, courts consider the "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against collective action treatment."  *See, e.g.*, *Buehlman v. Ide Pontiac, Inc.*, 345 F. Supp. 3d 305, 313 (W.D.N.Y. 2018).  Thus, rather than considering the ways in which the opt-in plaintiffs are *similar* in ways material to the disposition of their FLSA claims, district courts employing the ad hoc factors consider the ways in which the plaintiffs are factually *disparate* and the defenses are *individualized*.

We question whether the ad hoc approach is consistent with the notion that party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the

---

[7]     The ad hoc approach appears to have originated in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), in the context of an ADEA claim.  There, the district court considered collective plaintiffs' "disparate employment situations"; defendant's "defenses and the applicability of the defenses to the instant facts"; and, more generally, "considerations of fairness [and] efficiency" in concluding that collective plaintiffs were not similarly situated at Step Two.  *Id.* at 361-72.

disposition of their FLSA claims. First, it is abstract in a way that "risks losing sight of the statute underlying it" by "tend[ing] to explain what the term 'similarly situated' does not mean [rather than] what it does" mean. *Campbell*, 903 F.3d at 1114. Second, its "open-ended inquiry into the procedural benefits of collective action invites courts to import, through a back door, requirements with no application to the FLSA," like Rule 23(a)'s requirements of adequacy and typicality and Rule 23(b)(3) requirements of superiority and predominance. *Id*. at 1115. This flaw undermines what is supposed to be one of the chief advantages of the ad hoc approach, that "it is not tied to the Rule 23 standards." *Thiessen v. Gen. Electric Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001); *accord Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 n.38 (11th Cir. 2008) (citing cases); *Scott*, 2017 WL 1287512, at *8 (employing the ad hoc approach "[t]o avoid conflating § 216(b) collective certification with Rule 23"). Indeed, as discussed below, the district court's ad hoc analysis in this case suffered from this very flaw. It imported through the back door "requirements with no application to the FLSA" -- namely, that because there were a relatively large number of opt-in plaintiffs, the "similarly situated" inquiry "mirrored" the requirements of Rule 23.

32

*See infra* Part III.C.  We discuss this "sliding scale" analogy to Rule 23 in more detail.

### 3.    The "Sliding Scale" Analogy

Some district courts in this circuit, including the district court below, have grafted onto the ad hoc approach additional considerations.  One such consideration is what collective plaintiffs describe as a "sliding scale" analogy, because the district courts employing the analogy reason that "[t]he similarly situated analysis can be viewed, in some respects, as a sliding scale."  *Gardner v. W. Beef Props., Inc.*, No. 7-cv-2345, 2013 WL 1629299, at *4, 6 (E.D.N.Y. Mar. 25, 2013).  The analogy is straightforward:  "The more opt-ins there are in the class, the more the analysis under § 216(b) will mirror the analysis under Rule 23."  *Id.* at *6.  As a result, the court will import the more rigorous requirements of Rule 23 into the similarly situated inquiry in rough proportion to the number plaintiffs who have chosen to opt-in.  In so doing, the courts relying on this analogy conflate the requirements for class certification under Rule 23 with the requirements to proceed as a collective under § 216(b).[8]

---

[8]    *See, e.g., Mendez v. U.S. Nonwovens Corp.*, No. 12-5583, 2016 WL 1306551, at *4 (E.D.N.Y. Mar. 31, 2016) (noting that "[a]lthough the standard for establishing that the collective members are similarly situated under the FLSA is less stringent than the Rule 23 commonality standard, courts in this district have noted that these two standards are

This has led, in turn, to "courts assessing the predominance requirement . . . almost always reach[ing] the same conclusion about whether proceeding collectively is appropriate." Whilliam C. Jhaveri-Weeks & Austin Webbert, *Class Actions Under Rule 23 and Collective Actions Under the Fair Labor Standards Act*, 23 Geo. J. on Poverty L. & Pol'y 233, 264 (2016); *see also Ruiz v. CitiBank, N.A.*, 93 F. Supp. 3d 279, 298-99 (S.D.N.Y. 2015) ("[I]t is not mere coincidence that courts facing parallel motions to decertify an FLSA collective action under Section 216(b) and to certify a class action under Rule 23 have tended to allow either both actions or neither to proceed on a collective basis.").

For the reasons discussed below, we hold that analogies to Rule 23, including the sliding scale analogy, are inconsistent with the language of § 216(b) and that the question of whether plaintiffs may proceed as a collective under the FLSA is to be analyzed under the separate and independent requirements of § 216(b).

---

functionally similar"); *Ruiz v. CitiBank, N.A.*, 93 F. Supp. 3d 279, 298-99 (S.D.N.Y. 2015) (noting the "harmony of animating principles" underlying collective actions under § 216(b) and class actions proceeding under Rule 23); *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 651 (S.D.N.Y. 2013) (noting that although "conditional certification, decertification, and Rule 23 class certification are subject to disparate legal standards," courts nonetheless "have recognized that the 'similarly situated' analysis for purposes of FLSA certification can be viewed, in some respects, as a sliding scale").

First and foremost, it is already well established that the FLSA's "similarly situated" requirement is "independent of, and unrelated to" Rule 23's requirements, *Kern v. Siemens Corp.*, 393 F.3d 120, 128 (2d Cir. 2004), and that it is "quite distinct" from "the much higher threshold of demonstrating that common questions of law and fact will 'predominate' for Rule 23 purposes," *Myers*, 624 F.3d at 555-56. Nearly every circuit to consider the relationship between the modern Rule 23 and § 216(b) has reached the same conclusion. *See Campbell*, 903 F.3d at 1111 (holding that § 216(b) analogies to Rule 23 "lack[] support in either the FLSA or the Federal Rules of Civil Procedure"); *Calderone v. Scott*, 838 F.3d 1101, 1104 (11th Cir. 2016) (describing Rule 23 as "more demanding" than § 216(b)); *O'Brien v. Ed Connelly Enters., Inc.*, 575 F.3d 567, 584-85 (6th Cir. 2009) (describing Rule 23 as "a more stringent standard" than § 216(b)); *Thiessen v. Gen. Electric Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) ("Congress clearly chose not to have the Rule 23 standards apply to [collective actions], and instead adopted the 'similarly situated' standard. To now interpret this 'similarly situated' standard by simply incorporating the requirements of Rule 23 . . . would effectively ignore Congress' directive."); *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975) (describing actions under § 216(b) and Rule 23 as

35

"mutually exclusive and irreconcilable"); *see also Lusardi v. Lechner*, 855 F.2d 1062, 1078 (3d Cir. 1988). *But see Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) (noting that "the provisions of Rule 23 are intended to promote efficiency . . . , and in that regard are as relevant to collective actions as to class actions" because "there isn't a good reason to have different standards for the certification of the two different types of action[s]").

This conclusion is supported by the language and structure of § 216(b) and the modern Rule 23, which bear little resemblance to each other. *Compare* 29 U.S.C. § 216(b), *with* Fed. R. Civ. P. 23. Under § 216(b) of the FLSA, employees have a right to maintain a collective action "for and in behalf of . . . themselves and other employees similarly situated." Section 216(b) has nothing comparable to Rule 23(b)(3)'s requirements of predominance or superiority. And Rule 23's requirements of adequacy and typicality are intended to protect the due process rights of absent class members, which is not a consideration in a nonrepresentative action such as a collective action under § 216(b). *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *see also Campbell*, 903 F.3d at 1112. Indeed, Congress amended § 216(b) in 1947 expressly to put an end to representational litigation in the context of actions proceeding under §216(b), and

at the same time required that workers affirmatively opt-in by filing written consent as a condition to proceeding as a collective. *Compare* Fair Labor Standards Act of 1938, ch. 676, 52 Stat. 1060, 1069 (1938) (codified at 29 U.S.C. § 216(b)) (providing that employees proceeding under § 216(b) may "designate an agent or representative to maintain such action for and in behalf of all employees similarly situated"), *with* Portal to Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84, 87 (1947) (codified at 29 U.S.C. § 216(b) (1946 Supp. II)) (banning representative actions and providing that "[n]o employee shall be a party plaintiff to any such action unless he gives consent in writing to become such a party and such consent is filed in the court in which such action is brought").

In 1966, Rule 23 was amended to resemble its modern form, including for the first time Rule 23(a)'s requirements of commonality, typicality, numerosity, and adequacy, and Rule 23(b)(3)'s requirements of predominance and superiority. Fed. R. Civ. P. 23 (1966). Along with these revisions, the drafters also omitted the opt-in requirement contained in the former "spurious" class action device and replaced it with Rule 23(b)(3)'s opt-out requirement. *Id.* The opt-out requirement of the modern Rule 23(b)(3) directly conflicts with the express opt-in requirement of § 216(b). Accordingly, the drafters of the 1966

37

revisions explicitly noted that "the present provisions of [§ 216(b)] are not intended to be affected." Fed. R. Civ. P. 23 advisory committee's notes to 1966 amendment; *see also Knepper v. Rite Aid Corp.*, 675 F.3d 249, 257 (3d Cir. 2012).

Moreover, Rule 23 and § 216(b) serve fundamentally different purposes. Rule 23 provides a general procedural mechanism for the resolution of claims on a class-wide basis subject to the sound discretion of the district court. *See* Fed. R. Civ. P. 23. Section 216(b), by contrast, is tailored specifically to vindicating federal labor rights, and where the conditions of § 216(b) are met, employees have a substantive "right" to proceed as a collective, a right that does not exist under Rule 23. *See* 29 U.S.C. § 216(b); *see also Hoffman-La Roche*, 493 U.S. at 173; *Monroe v. FTS USA, LLC*, 860 F.3d 389, 396–97 (6th Cir. 2017); *O'Brien*, 575 F.3d at 586.

We conclude by noting that "the FLSA not only imposes a lower bar than Rule 23, it imposes a bar lower in some sense even than Rules 20 and 42, which set forth the relatively loose requirements for permissive joinder and consolidation at trial." *Campbell*, 903 F.3d at 1112. "Whereas [Federal Rules of Civil Procedure] 20 and 42 allow district courts discretion in granting joinder or consolidation, the FLSA, which declares a right to proceed collectively on

satisfaction of certain conditions, does not." *Id.*; *see also O'Brien*, 575 F.3d at 584-85; *Grayson*, 79 F.3d at 1095-96; *Lusardi*, 855 F.2d at 1078. Furthermore, joinder under Rule 20 requires, in addition to a common question of law or fact, that the plaintiffs assert a right to relief arising from "the same transaction[ ] [or] occurrence[]." Fed. R. Civ. P. 20(a)(1)(A). No such condition exists in the text of the FLSA. *See* 29 U.S.C. § 216(b); *see also Campbell*, 903 F.3d at 1112.

For these reasons, we hold that the requirements for certifying a class under Rule 23 are unrelated to and more stringent than the requirements for "similarly situated" employees to proceed in a collective action under § 216(b). Accordingly, it is error for courts to equate the requirements of § 216(b) with those of Rule 23 in assessing whether named plaintiffs are "similarly situated" to opt-in plaintiffs under the FLSA.

### C.   *Application*

Collective plaintiffs principally argue that the district court committed legal error in employing the "sliding scale" analogy to Rule 23 as it improperly conflated § 216(b) with Rule 23 and that rule's more stringent requirements. We agree.

39

After citing to the two-step approach endorsed by this Court in *Myers*, the district court proceeded to analyze whether collective plaintiffs were similarly situated using the ad hoc factors. *Scott*, 2017 WL 1287512, at *8. In its discussion of the ad hoc factors, the district court noted that their use is intended "[t]o avoid conflating § 216(b) collective certification with Rule 23." *Id.*

Despite this disclaimer, however, in the very next sentence of the opinion the district court did just that -- conflated § 216(b) with Rule 23 -- in analyzing the first ad hoc factor. The district court began its discussion of collective plaintiffs' disparate employment settings by noting that "[c]ourts have recognized that the 'similarly situated' analysis for purposes of the FLSA certification can be viewed, in some respects, as a sliding scale. In other words, the more opt-ins there are in the class, the more the analysis under § 216(b) will mirror the analysis under Rule 23." *Id.* (quoting *Indergit*, 293 FR.D. at 651). In doing so, the district court imported through the back door of this ad hoc approach the more stringent requirements of Rule 23, which have no application to the FLSA.

The district court assumed that the size of the collective required a heightened level of scrutiny mirroring Rule 23, which necessarily weighed in

40

favor of decertification -- particularly because the district court had concluded earlier in the same opinion that class plaintiffs failed to establish predominance under Rule 23. Indeed, after invoking the "sliding scale" analogy, the court proceeded to reference its conclusion with respect to predominance that "Apprentices had vastly different levels and amounts of authority in exercising managerial tasks." *Id.* The district court then held that "disparities in job duties" are "axiomatic considering that the 516 opt-in plaintiffs worked at 37 states across Chipotle's nine geographic regions." *Id.* at \*9. On this basis, the district court decertified the collective action.

This was error. In effect, the district court held that collective plaintiffs could not be similarly situated *because* class plaintiffs' common issues did not predominate over individualized ones. It is simply not the case that the more opt-ins there are in the class, the more the analysis under § 216(b) will mirror the analysis under Rule 23. *Supra* Part III.B.3; *see also O'Brien*, 575 F.3d at 584-85 (holding that the district court erred when it "implicitly and improperly applied a Rule 23-type analysis" to the FLSA); *Morgan*, 551 F.3d at 1265 (noting that "the size of an FLSA collective action does not, on its own, compel the

conclusion that" it should not be maintained).  Accordingly, we vacate the

district court's decertification of the collective action and remand.

On remand, the district court shall reconsider whether named

plaintiff and opt-in plaintiffs are "similarly situated" -- that is, whether they share

one or more similar questions of law or fact material to the disposition of their

FLSA claims.  In doing so, the district court shall take into account its conclusion

with respect to commonality that "the question of whether Apprentices were

misclassified as exempt employees is common to all class members because it can

be answered with common proof."  *Scott*, 2017 WL 1287512, at *3.  This

conclusion was based on the district court's findings that (1) "Chipotle uniformly

classified all Apprentices as exempt," (2) "Chipotle has an expectation that the

core duties of the Apprentice is the same," and (3) "Chipotle uses a single job

description for all Apprentices."  *Id.* (internal quotation marks omitted).  These

facts, the court concluded, are "unquestionably probative of whether an

employee is properly classified as exempt. "  *Id.* (internal quotation marks

omitted).

Though these findings were made with respect to the class plaintiffs,

and though courts may not import the requirements of Rule 23 into their

application of § 216(b) in assessing whether named plaintiffs and opt-in plaintiffs are similarly situated under the FLSA, these findings are relevant to collective plaintiffs' argument that they are similarly situated.  Indeed, the "common question" requirement of Rule 23(a) and the "similarly situated" requirement of § 216(b) serve comparable ends:  to identify those shared issues that will collectively advance the litigation of multiple claims in a joint proceeding.[9]  And as the district court correctly noted, "the *differences* in the actual job duties of Apprentices are 'better suited to the predominance inquiry . . . together with an analysis of the Rule 23(b)(3) factors.'"  *Chipotle*, 2017 WL 1287512, at *3 (quoting *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 415 (S.D.N.Y. 2013)).  Thus, as the district court seems to acknowledge, these differences will not prove fatal to the "similarly situated" analysis in the same way they proved fatal to the

---

[9]     In analyzing commonality under Rule 23(a), "[w]hat matters . . . is not the raising of common 'questions' -- even in droves -- but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  In analyzing whether the "similarly situated" requirement is met under § 216(b), what matters is the extent to which named plaintiffs and opt-in plaintiffs share a similar issue of law or fact material to the disposition of their FLSA claims. *See infra* Part III.B.1.

We caution that despite these similarities, courts should not overly rely on *Dukes* and other class action case law in considering collective actions. *See* 7B Wright & Miller, Fed. Prac. & Proc. Civ. § 1807 (observing that district courts have "uniformly" rejected the argument that *Dukes* affects the FLSA's "similarly situated" requirement).

predominance inquiry in this case. If named plaintiffs and opt-in plaintiffs are similar in some respects material to the disposition of their claims, collective treatment may be to that extent appropriate, as it may to that extent facilitate the collective litigation of collective plaintiffs' claims.

Because the district court conflated the standards for maintaining a collective action under § 216(b) and a class action under Rule 23, we vacate the decision of the district court and remand for further proceedings consistent with this opinion.

## *CONCLUSION*

Accordingly, we AFFIRM the district court's denial of class certification as to class plaintiffs' claims, we VACATE the district court's decertification of the collective action, and we REMAND for further proceedings consistent with this opinion.

## Appendix

MARVINS GEORGES, FRANCISCO MAYORGA, KATHERINE FLANAGAN, LEAH TURNER, JOSE RAFAEL LOPEZ, JUSTIN GRAZUNA, CHRIS HALLER, MICHAEL CARVER, MICHAEL DMYTRYK, MARK DANNEMILLER, ASHLEY PAMPLIN, ANTHONY BARTON, BRITTNEY MILLER, JAYSON GOLDSTEIN, AMANDA MARKS, MICHAEL HAMILTON, JOSEPH F. DE MAYO, MATTHEW FLANDERS, SARAH O. STRONG, STEPHEN PREISIGLLE, MARK A. WILSON, SHAWN T. KURTZ, SHAKIRA HAWTHORNE, SUZANNE ANDERSON, EDMAR SOARES SIMOES, JESUS HERNANDEZ, LISA JOHNSON, JOSE A. SANTIAGO, JOSHUA COBAN, MARQUICE MARRERO, NELSON JOVEL AGUEDO DEJESUS, KELLI WINICK, NATALIA BARKER, LUZ B. HENRIQUEZ, SHAWN GREEN, JOHNNY GASPER, RUSSELL FLIDDY, EMILY GJERTSON, KEVIN CALLAHAN, RONALD E. CONSELLO, JR., ALESIA WILLIAMS, STACY R. PENA, ALMA PULIDO, ANDREW J. HIRSCH, THEODORE R. JACKSON, JR., DAWN AKASON, JAMES LEE PERKINS, III, ZAIDA ORTIZ, MARIA VALENZVELA, NICOLE WATTS, DEREK A. GASSAWAY, ERIC BUTTNER, ELIZABETH DIAZ, SARAH VALDERRAMA, MANDY L. MCLOUGHLIN, JEREMY A. REESE, ALI SHEPPARD, MARIBEL M. MAHER, STEFFRIN R. WINFREY, BRIAN D. ROGERS, VERONICA WELLS, ROBERT STEDEM, JAVIER VALERIO, DANIELLE ROURKE, COREY PAULEY, CHRISTINE M. SVOREC, HEATHER FANSHER, MICHAEL T. LEACH, ROSALIE MERRILL, (MALERONI), BIVIANA ESPINOZA, ANGELICA ORTEGA, DUSTIN SCHREIBER, SPENCER PARKER, SARA MURRAY, SCOTT RIEGER, EDWARD WRIGHT, GENE KAY, RANDY JAMES DEAN, KEVIN ZARLEY, COREY TURNBULL, IVAN OLIVARES, JAVIER VILLEGAS, SANDRA K. STEWART, LUZ MARTINEZ ACOSTA, KERSTINA CAGGIANO, EDWARD TRIPLETT, CANDICE VANCAMP, LEONARDO CERQUEIRA, BRANDON KELLER, BRANDON W. DORAN, CARLOS E. FLOUS AURAYA, GLENN SHANK, CHAD KINSWORTHY, BERNARDU ESCOBAR PEREZ, JAIME SAONA, JASON GILBERT, BRANDON WOMACK, RACHAEL CASCIANO, RUSSELL BEHRMAN, PATRICIA ANN MOODY, ANDREW KAIS, BRATSSON E. PINTO, SERGIO DANICO JUAREZ, RICARDO GARCIA, IAH MAROLS, SHANE BARTON, JOSE PEREZ, BENJAMIN D. HOWARD, ADAM SHERRIS, ROBERTA FACTOR, JONATHAN MARVIN, RACHEL SPALTH, MATT ROMMEL, DENISE TATOM, EDWARD BOBB, JHONSON MORILLO, NATHANIEL J. CAMACHO, CRYSTAL BERRY, SOCORRO JIMENEZ, DAVID EICH, MARIA MURZADO, ROBERT FARMER, KRISTY BOWEN, KRISTIN LOMBARDI, TANNER L. RENNINGER, MARICELA VENTURA, TARA WOOD, LAURA K. ORTEGA PEREZ, JASON LEIB, MARVEZ ALEGRIA, CLARIBEL VEGA, REGINALD DOVE, JR., CHRISTOPHER BASSFORD, JONATHAN STREETMAN, MARIA A. ARGUELLES, DAVID ORDONEZ,

MEAGAN U. CROWE, ALBERTO MENDOZA CHAVEZ, JOSH VENVERLON, STEVEN H. STOWE, ERIC RIOS-FERMAN, MARC LINAMAN, ANA M. JIMENEZ, JESSICA VILLEGAS, JAMES TOWNSEND, JACOB DUNCAN, ALEX D-B POON, DANIEL BARBER, KELLIE SCHOENEMAN, ERIN DURKIN, GUILLERMO MARTINEZ, JR., DEWAYNE GARDNER, JENINE MEISNER, LAURA KNIGHT, JOSHUA DAMERON, JR., ROSS ARCE, SHAKIRA FREEMAN, CAMNLE BURNEVIK, VANESSA ACEVEDO, BRANDON GILLISSIE, KEVIN STECKE, ANGELA WICKEIF, SUSAN C. STRUNK, CHRISTIAN ARMENTA, MATHEW KREUZER, LENA M. FAMULANO, DONNELL HARRIS, NICOLE FAULKNER, CARLOS FERNANDEZ, BRIAN ALLEN MORA, MATTHEW MCGOWAN, VLADIMIR S. GARRIDO BIAGETTI, BRITTANY DOWELL, TONY HERNANDEZ, III, STEPHEN W. ROBERTS, HANNAH E. VOYTEN, STACY M. JOHNSON, JOSHUA LEONOR, RACHAEL JACK, ROBERT C. SHOUP, SHARA L. MATLOCK, SHANTELLE OLIVER, MIGUEL MARTINEZ, AMY TULLIS, ANDREW HETTINGER, MEGAN MACINTYRE, IAN SAMPSON, DENIENE GOREY, VANESSA GONZALEZ, ARTHUR BAKER, CHARLOTTE R. MAXWELL, AARON HORNER, ANNA DILLON, PAUL BISSETT, KAYLA NEWSOM, AMANDA FISHER, ALEXANDER DANIELS, GAGE BENSON, CORY TSEV, IVAN RUIZ, RUDY NUNEZ, SHADD MELCHIORRE, OMAR GUTIERREZ, ORIDIO CASTRO-DELCID, RUDY VILCHIS, CORDELL GODFREY, HEATHER RICHARDS, JULISSA DOUVILLE, CHELSEA E. FIELDS, RONALDO ALVAREZ, JACKIE LOUDERMILK, CLAUDIA E. TAYLOR, DEREK IAN CANTWELL, LETICIA QUINTERO, JERA L. PENNINGTON, MATTHEW T. DONIS, RYAN M. CASSLER, ANGELA GESARIO, SCOTT TAFT, REYNA C. CRUZ, DARRELL WARD, DANIEL ARGO, MEGAN A. MURRAY, MATTHEW SAUERS, ELIZABETH HOPKINS, BARBOA CAESAR, SHELLY M. STINSON, JUSTIN BREEDEN, REYNA M. RYES LARIOS, JENNIFER CURTIS, JESSA ANDERSON, JESSE WOOTEN, GABRIEL O. GURALIEROS, SCOTT MEISTER, FRENDIRA GOMEZ, DANIEL NEFF, DANETTE RODRIGUEZ, JOHNNY MALDONADO, ADAM DIREISDORF, JESSICA L. KACZMAREK, MICHAEL BEER, JOEL MAYO, MEGHAN L. CLOSE, MELISSA MARTINEZ, GIVONTE HUEY, ADAM DAVIS, DUSTTIN NICHOLSON, ROBERT MCCANN, GABRIEL WHITE, JONATHAN BOUYER, MICHAEL S. MOSCHINI, JULIE ANNE CORTIZO, AUBRY BAIRD, BRITTANY SWA, VERONICA MENCHEN, NETANEL GUTT, CARMEN M. DIAZ, ROBERTO GOUT, BEN CAMARONE GARR, MEAGHAN MCCLUGAIA, GROCAIELO HERNANDEZ, ROBERTA OKUADJO, KARISMARIE NIEDZWIECKI, SCOTT RAMR, EMILY EDGAR, LAURA IBARRA, ERIC LEWIS, JOSE A. SANCHEZ-PENA, DEREK CASE, KARLI KOPIETZ, CARLOS ROMERO, DARRELL ANDERSON, KRISTIAN PI, MELISSA ALVARADO, ROBERT O. SMITH, PAUL A. ANDORFER, ELIZABETH H. GOMULA, JEFFREY A. MOBLEY, JOSHUA MIDDENDORF, KAYLA M. DAVIS, CHRIS PERRY, ANDRES QUINONES, ROWANA ANTHONY, MARIA REYES, ZACHARY SANFORD, SANDRA CHURCH,

TONY LACHEL, MILTON CHAMBERLAIN, III, ANDREW MCIALWAIN, SARAH ELIZABETH WILLS, JASON LEVERENZ, ERIKA MAH, ARGURO RAMON, SCOTT MUMFORD, FERNANDO BARRETO, DAVID R. PERRUCHON, URI ANTONIO AGUILAR, JOSEPH DEIVECCHIO, MARK B. PAETZ, SHENISE WILLIAMS, CARLA M. CARRABBIA, STEPHANIE PORTILLO, JAMES BITTNER, SORAYA KANOU, MARTHA RODRIGUEZ, KEVIN CHAN, RICHMOND C. FRISON, ANDRIA LARSON, VICTORIA GUTIERREZ, RUSSELL A. CARATANUTO, FRANKO MERINO, EDITH SIGARAN, MARINA TAYAMA, RACHEL NORRIS, CIARA L. HURU, TRACIE SHALTUCK, HOLLY KENNELL, MARK GIORDANO, MICHAEL PRINGLE, JESSICA GARCIA, VERENICE GALVAIN, MAYLIN LEE SCHOFIELD, GENIFER GELMAN, RAMON A. RAMOS, STEVEN HALSTEAD, STEVEN MOO, NICHOLE R. HUNDLEY, DARLENE NICHOLS, JOHN THOMAS GONZALEZ, COLE HOLMAN, JOHNATHAN MORRIS, DANIEL FERRIE, KRISTEN KING, AMANDA PASTORE, MIRIAM BAUTISTA, DONNA LEE JOHNSON, JOANNY ALVAREZ, KYLE YANDENBURGH, ALEJANDRO LOPEZ, KELSEY WRIGHT, ZAKARIA FESSIKH, MATTHEW ROWEDDA, JONATHON WOLAK, LUIS A. VEGA, SAIAS MARTINEZ MONDRAGON, MARCOS MCADOO, REBECCA DAMPHOUSSE PLANT, MONICA GARCIA, DANIELLE ENGLE, ERIC LUND, JOSH PAETZ, JIMMY TUCKER, AMANDA HENRY, JESSICA DAVIES, ROBYN YEAGER, KALINDA FLORES, JOSE R. ORTEGA, JOHN M. FEAR, JAMIE LAMB, JUVENAL VARGAS, OSCAR PEREIRA, KYLE FENNESSEY, CHELSEY NICASTRO, CARLOS ALEXI AVALOS GRANADOS, HEATHER DORNHECKER, PATRICE DERFLINGER, MARTA SERRATO, DENNIS MIGUEL ORDONEZ-RAMOS, RAMON ALONSO, JOSIE HALL, LYDIA PIEPER, RAUL CRUZ, MICHAEL J. WOOD, ERICK MEDINA, CARRIE SWANSON, (CLEMETSON), KEISLER BAQUIRAN, BRITTNEY ALSTON, GABRIEL VASQUEZ, NICOLE DAVIS, KELLY PALECEK, DANIEL HOWLING, LUIS VIDAL, KRISTIN VATES, ALEXANDRA NEAL, RICHARD BUTCHER, ISELA HERNANDEZ, NORMA P. MORALES, STEPHANI TWIDELL, JOSE RAUL BARRIOS, DARRYL MILLEDGE, SCOTT M. COSTELLO, KENNETH J. STACY, NICHOLAS TELLEZ, SEAN SULLIVAN, JEFF HABLE, KRYSTAL BEINING, LORENA A. CHAPARRO, ARAN CASTILLO, JOHN J. HOLLAND, MARK A. GAJDA, MARISOL I. TELLEZ, DUSTIN ROBERTS, STEVEN HASTINGS, JEFFREY E. RUPARD, JOANNA WILLIAMS, RYAN CHRISTOPHER FURST, ABIGAIL VEGA, WANDA A. HARY, MICHAEL PRICE, MARISSA COOLEY, CRUZ FLORES, MATTHEW WERNER, GREGORIO CASTILLO, RAMEL CRESPO, ANTHONY ESQUIVEL, OCTAVIO MORA, JACOB N. WILDE, CHRISTIAN ROCHA, JASON A. SIMON, NICOLE RECCO, JOHN JOYCESUMMERFELD, NATHAN FENWICK, MICHAEL BERLAD, JORGE LOPEZ, EUA ANGEL, MARISOL RAMIREZ, KELLY NITZSCHE, EMILY A. CARR, APRIL LEAH MILLER, (DELSOL), KARL HASENDEHRL, ISABEL PRITCHETT, RYAN MCINTYRE, ANHARA ROLON YANEZ, ADAM CHRISTIAN, EUSTOLIA MEDINA,

PATRICIA VILLANUEVA, MERIDETH ELBRECHT, JOHN UNDERWOOD, OLGUIMAR RODRIGUEZ-RAMOS, ROSARIO BETANCOURT, KRISTINA R. RODRIGUEZ, MELVIN ALVAREZ-GREGORY, KATHRYN DIAZ, MOISES RUIDIAS, NATHANIEL DAVID SCHNEPPLE, DANIEL DALTON, ROBERTO GOMEZ, DIESHON CLARK, JONATHAN POPCHOKE, MATTHEW TORNO, NICHOLAS DWYER, WILLIAM AVILES, AILIN REYES, ABRAHAM MORAGA, JESUS ORTEGON, CHRISTOPHER AARON ARMSTRONG, LUIS VICENCIO, CHUN W. YU, ALMA DELIA CALDERON VELAZQUEZ, APPOLONIA PEREZ, STEVEN ROPER, ROBERT STRAUSBAUGH, LOVANA TAYLOR, ALEXIS L. MARTINEZ, MARTHA LORENZO MORALES, JOSE HERNANDEZ-MIRANDA, LAUREN KELSCH, SEAVEN CAYSON, REGGIE COVERSON, STEVEN CRAMP, SARAH L. MEYER-ALLEN, CASSANDRA MALAK, WILLIAM COLLINS, NORMA ORTEGA, KYLE RICHUN, EMILEE CALHOUN, MIKE STELZER, MORTIMER CADOGUN, RAUL RUIZ, JR., RAUL LOVATO, LUIS ALONSO ORTEGON, CHRISTINA HOLLINGSHEAD, ADAN CASTILLO RAMOS, ERIC LOW, VANIA VASQUEZ, JONATHAN R. NICHOL, JOE ROSTYNE, JANNELLE KIRKWOOD, KOFI BOSSMAN, NATANAEL DIAZ PORTILLO, TARA M. GENTRY, CHRISTINA G. WEST, GERALD V. LABENSKY, JR., FREDDY A. DIAZ VEGA, SARA GARNER, MICHAEL RINGLE, FELIPE NAVARRO, PARITHAN KUNGSUVVAN, JOSEPH JACOBS, ALEXANDRIA RAMAS, SARAH NOAH, JONATHAN M. HAYS, ROBERT J. GALLAGHER, RENEE POPE-MACEDO, KATHRYN ARMSTRONG, NICOLE PERKINS, MICHELLE HERRERA, LUIS TORRES, II, AMBER L. FORTSON, BRANDON MORGAN, VIDALIA FLORES TRUJILLO, SARAH PAPE, JOEL GOSNELL, VIVIANA HENRIQUEZ, AMIE MYERS, DAVID NOEL, ANDREW PAOLINETTI, ADELINA SANCHEZ, WAYNE CHARLES FRANZ, WILLIAM R. DOWNARD, MILAGROS M. DE LA FUENTE, BRIDGETT THOMAS, JOSE JACOBS, WILLIAM I. LAKE, CRYSTAL TORRES, ERNEST M. DIAZ, SHALETT DOXIE, SHALETT DOVIE, BRIAN P. HOWELL, JOSSEP DIAZ, JASON KERN, MADDIE BRENNAN, JOE DETTLO, MELISSA SOSA, EVA ANGEL, LOURDES P. FLORES, ANA DELGODILLA, TIARA HUGHES, ROXANA MORALES, FREDDIE AHUMADA, ANTHONY MANCO, LAURA YBARRA, CARLOS FRAGUADA, PETER C. DELGADO, BRITTANY LINK, JOSE VILLAFRANCO, CONSUELO V. PEREZ, JOSE RAMIREZ, ANA PIMENTEL, BONNIE BUSS, KEVIN SCOTT, GRACIELA ESCOBAR, MORTIMER CADOGAN, THOMAS BLAKE DODSON, WILLIAM R. MEYER, RYAN TRACY, BRIAN SHORT, RAFAEL ESCALANTE, JOSEPH ROSTYN, ANA LUISA VIDAL, JOHN E. HEJDUK, THOMAS WERNER, ASHLEY P. GREEN, MICHAEL IERINA, KATE KUZMESKUS, ERNESTO BALDELAMAR, CARMELO MENDEZ, JR., OMAR CASILLAS, JACOB MAJOR, KAI CLARK, RODIS NAJARRO, MARIA ROSA, MARK A. TURNER, TRISTA P. TAGUE, YVETTE DODGE, COREY YEAUGER, HANS RICHTER, JOSHUA GOTTLOB, ALYSSA ASHLEY CHISHOLM, BRYCE HANDY,

GABRIEL CARRION VELLEJO, ALFREDO CUATE BRIONES, ANA MARIA
HEREDIA, ANA LAURA SANCHEZ INFANTE, JAIME MANZO, JASON LIS

SULLIVAN, *Circuit Judge*, concurring in part and dissenting in part:

While I concur in Parts I and II of the majority's decision, I respectfully dissent with respect to Part III. Specifically, I disagree with the majority regarding the proper standard to be applied in determining whether plaintiffs are "similarly situated" for the purposes of a collective action under 29 U.S.C § 216(b). Furthermore, I believe that the district court's decertification of the collective action was not an abuse of discretion when judged against the correct standard. Accordingly, I would affirm the district court's ruling in its entirety.

## I.

First, the majority's newly minted definition of "similarly situated" – *i.e.*, that "named plaintiffs and opt-in plaintiffs share *one or more* issues of law or fact that are material to the disposition of their FLSA claims" regardless of any "dissimilarities in other respects," Maj. Op. at 29 (emphasis added) – has no basis in the text of the statute. As the majority concedes, the FLSA nowhere defines the term "similarly situated," leaving the words to be interpreted in accordance with their plain meaning and the reasoned judgment of district judges tasked with assessing the universe of facts available in a given case. Common sense would suggest that "similarly situated" often requires more than the sharing of a single

fact or legal issue, and that the existence of multiple dissimilarities would be highly relevant to the inquiry. The majority's definition – equating "similarly situated" with "any similarity" – lowers the bar for collective actions, and reduces district courts to mere bystanders rather than gatekeepers.

Unlike the majority, I do not view the differences between Rule 23 and § 216(b) as supporting the "any similarity" standard. To be sure, the standards under Rule 23 and § 216(b) are wholly "independent of, and unrelated to" one another, *Kern v. Siemens Corp.*, 393 F.3d 120, 128 (2d Cir. 2004) (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n.12 (11th Cir. 1996)), and the requirements of § 216(b) are less stringent than those of Rule 23, *see Myers v. Hertz Corp.*, 624 F.3d 537, 555–56 (2d Cir. 2010), in part because courts are not faced with the same due process concerns regarding absent class members that they face in a class action under Rule 23, *see Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 263 n.17 (S.D.N.Y. 1997) (Sotomayor, J.) (observing that Rule 23 is designed in part to protect the due process rights of absent class members, a concern that is not present in the FLSA context). Nevertheless, I am not convinced that Rule 23 and § 216(b) serve "fundamentally different purposes," Maj. Op. at 38, or that their differences are so substantial as to make the "similarly situated" requirement of § 216(b) a mere

2

formality. "Section 216(b) of the FLSA and Rule 23(b)(3) are animated by similar concerns about the efficient resolution of common claims." *Calderone v. Scott*, 838 F.3d 1101, 1103 (11th Cir. 2016). While plaintiffs must make an additional showing to be certified as a class under Rule 23, neither plaintiffs nor the court would be significantly benefited if plaintiffs were allowed to proceed collectively despite having drastically different material facts or different legal claims simply because they share a single common fact or legal issue. *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) ("A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding *of common issues of law and fact arising from the same alleged discriminatory activity*." (emphasis added)); *see also Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 538 (3d Cir. 2012) (explaining that "simply sharing a common status, like being an illegal immigrant," and being subject to a "common scheme" does not amount to being "similarly situated" if "[l]iability and damages still need to be individually proven"). Although the majority is undoubtedly correct that "where the conditions of § 216(b) are met, employees have a substantive 'right' to proceed as a collective," Maj. Op. at 38, plaintiffs must, as a threshold matter, actually satisfy

3

those conditions – including that they are "similarly situated." Where they cannot, employees will nonetheless continue to have an incentive to bring FLSA suits individually, particularly since prevailing plaintiffs will still be entitled to attorneys' fees under the statute even if the damages award is modest. *See Fisher v. SD Prot. Inc.*, 948 F.3d 593, 604 (2d Cir. 2020) (emphasizing that there is no requirement that attorneys' fees be proportional to the settlement amount, as "[t]he whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery" (emphasis omitted) (quoting *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011)).

I am equally unpersuaded by the majority's critique of the ad hoc test employed by the district court and many other courts around the country. Maj. Op. at 31. Most of the cases cited by the majority are readily distinguishable, and do in fact assess some of the factors identified under the so-called ad hoc test. *See Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 226 (3d Cir. 2016) (emphasizing that courts should consider "all relevant factors . . . on a case-by-case basis," including "the factual and employment settings of . . . plaintiffs, the different defenses . . . , the degree of fairness and procedural impact of certifying the action . . . , and whether plaintiffs have made the appropriate filings with the

4

EEOC"); *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 367 (S.D.N.Y. 2014) (looking not to a single question of law or fact but rather "common questions of law and fact," and specifically noting that courts typically consider the ad hoc factors). The majority leans most heavily upon the Ninth Circuit's decision in *Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018), which contains broad language that arguably supports the majority's expansive "similarly situated" requirement. But while the Ninth Circuit disapproved of the ad hoc approach "as it is typically articulated," even it clarified that it did not intend to "preclude the district court[] from employing . . . a version of the ad hoc test modified so as to account for the flaws" it had identified. *Id.* at 1117, 1117 n.21.

To me, it seems obvious that an assessment of whether plaintiffs are "similarly situated" requires the application of an ad hoc test that leaves district courts free to consider the myriad factors – including both similarities and dissimilarities – at play in a given case. *See Zavala*, 691 F.3d at 537–38 (finding that the plaintiffs had failed to satisfy the "similarly situated standard" because "[t]he similarities among the proposed plaintiffs are too few, and the differences among the proposed plaintiffs are too many" such that there would be "minimal utility in streamlining resolution of the claims"). Although the requirements under Rule 23

5

and § 216(b) are different, we have in fact recognized that the predominance inquiry under Rule 23 and the "similarly situated" standard under § 216(b) are "admittedly similar." *See Myers*, 624 F.3d at 556. A district court should thus consider similarities such as "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 85 (3d Cir. 2017) (emphases omitted) (quoting *Zavala*, 691 F.3d at 536–37). It should then weigh these against any dissimilarities, such as the "disparate factual and employment settings of the individual plaintiffs" and "defenses available to defendants which appear to be individual to each plaintiff." *Scott v. Chipotle Mexican Grill, Inc.*, No. 12-cv-8333 (ALC) (SN), 2017 WL 1287512, at *8 (S.D.N.Y. Mar. 29, 2017) (quoting *Hernandez v. Fresh Diet, Inc.*, No. 12-cv-4339 (ALC) (JLC), 2014 WL 5039431, at *3 (S.D.N.Y. Sept. 29, 2014)); *see also Zavala*, 691 F.3d at 536–37 ("Plaintiffs may also be found dissimilar based on the existence of individualized defenses."). In weighing these factors, a court should consider "fairness and procedural considerations counseling for or against collective action treatment." *Scott*, 2017 WL 1287512, at *8 (quoting *Hernandez*, 2014 WL 5039431, at

*3. In my view, this standard more appropriately accounts for the "flaws" identified by the court in *Campbell* while still promoting efficient and just resolution of claims.

I am thus less troubled than the majority that "courts facing parallel motions to decertify an FLSA collective action under § 216(b) and to certify a class action under Rule 23 have tended to allow either both actions or neither to proceed on a collective basis." Maj. Op. at 34 (quoting *Ruiz v. CitiBank, N.A.*, 93 F. Supp. 3d 279, 298–99 (S.D.N.Y. 2015)). While the two provisions are surely distinct, such an outcome would seem to be a natural result of two statutes that allow for class treatment based on some showing of similarity between plaintiffs. In sum, rather than being forced to certify a collective if plaintiffs share a single common issue, the district court, with the benefit of having reviewed volumes of record evidence after years of discovery, should be able to weigh the similarities and dissimilarities to determine if plaintiffs are "similarly situated" such that the collective action mechanism is the appropriate vehicle for the claims at issue.

## II.

Having defined what I view as the appropriate standard, I also depart from the majority's application of the law to the facts here. While one can quibble with

the propriety of the district court's reference to the "sliding scale" standard, it seems to me that the district court's ultimate conclusion in this case was wholly justified. *See Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d Cir. 2002) (upholding the district court's decision where it misstated the standard but properly analyzed the claims). The district court cited the ad hoc factors "[t]o avoid conflating § 216(b) collective certification with Rule 23," and I see no evidence that its analysis was in fact driven by the more stringent requirements of Rule 23. *Scott*, 2017 WL 1287512, at *8. Instead, the district court concluded that despite the possibility that one could identify a common issue among Plaintiffs, the similarities were superficial. Its decision was supported by factual findings, and to my mind at least, was not an abuse of discretion.

For all of these reasons, I would affirm the district court's ruling in all respects. I therefore dissent from Part III of the majority's opinion.